IOWA-DES MOINES NATIONAL BANK & TRUST COMPANY, Trustee, Appellant, v. H. K. CRAWFORD et al., Appellees.

No. 42250.

DECEMBER 14, 1933.

REHEARING DENIED FEBRUARY 8, 1934.

Stipp, Perry, Bannister & Starzinger, for appellant.

Brunk, Bennett & Janss, for appellees.

DONEGAN, J.—In April, 1923, C. H. Rosenbaum desired to purchase certain real estate, including the dwelling thereon, which belonged to the estate of James S. Patten, deceased, in the city of Des Moines, Iowa. The purchase price of the real estate was $20,000, of which $8,000 was paid in cash. Said Rosenbaum, for private reasons, did not desire to sign the mortgage for $12,000, representing the balance of the purchase price. Pursuant to an arrangement, the property in question was, therefore, conveyed by the executors of the estate of James S. Patten, deceased, to H. K. Craw-

ford. H. K. Crawford and his wife, Leta L. Crawford, thereupon executed a note for $12,000, which was indorsed by C. H. Rosenbaum, and, to secure said note, they executed the mortgage involved in this case. They, thereupon, immediately conveyed the property to C. H. Rosenbaum, subject to the mortgage. Said mortgage, among others, contained the following provisions:

"And it is further expressly agreed, that in the event of failure to pay said sums of money, or any part thereof, or the interest thereon, when due and payable, said second party, its successors or assigns, shall have from the date of such default made, as additional security for the sums of money secured by this mortgage, a lien on all crops thereafter raised on said Real Estate and all rents and profits thereafter accruing thereon, and shall be, and hereby is authorized to take immediate possession of said property, and to rent the same, and shall be held liable to account to said first party only for the net profits thereof. It is also agreed that the taking possession thereof as above provided shall in no manner prevent or retard the collection of said sums by foreclosure or otherwise.

"It is further agreed that in the event action is brought to foreclose this mortgage, the court shall have the right and power to appoint a receiver to take possession of said premises and apply the rents and profits therefrom upon said indebtedness."

On the 27th day of October, 1932, the plaintiff, as trustee for John S. Patten, filed a petition for the foreclosure of said mortgage and asked that a receiver be appointed "to take possession of the mortgaged premises and collect and receive the income, issues, and rents therefrom during the period of redemption." The defendants H. K. Crawford and Leta L. Crawford filed answer admitting the execution of the note, but alleging that they had no interest in the real estate covered by the mortgage, and that they executed the note and mortgage as an accommodation only to the payee of the note and C. H. Rosenbaum, under an agreement that they would in no event be personally liable on said note. The other defendants appeared by their attorneys but filed no answer, and a default was entered against them, reserving, however, the right to appear and contest the appointment of a receiver to collect the income of the mortgaged premises. Thereafter, on April 3, 1933, a decree was entered, which found the total amount due on the note to be $12,752.15, and a judgment in rem for this amount was entered

against the mortgaged premises. No personal judgment was entered against any of the defendants. The decree provided that:

"This cause is continued until after the sale for such order as shall be just and equitable concerning the occupancy of said premises, the payment of taxes and the upkeep of said premises and the appointment of a receiver pending the expiration of the period for redemption."

Special execution issued and the mortgaged premises were sold at sheriff's sale for $10,212.25, leaving a deficiency judgment of $3,128.14. On June 10th thereafter, the defendant E. D. Rosenbaum, the widow of C. H. Rosenbaum, who had died prior to said foreclosure proceeding, filed a resistance to the plaintiff's application for the appointment of a receiver, and hearing upon such application and resistance thereto was held on the 12th day of July, 1933, resulting in an order of the trial court overruling plaintiff's application for the appointment of a receiver. From this order, plaintiff appeals.

The only question involved in this appeal is the correctness of the trial court's order in refusing to appoint a receiver to take possession of the mortgaged property and collect the rents and profits therefrom. The mortgaged property was acquired and used by C. H. Rosenbaum and the appellee, who is his widow, as a homestead, and the reasons presented by the appellee in support of the court's ruling are based upon her homestead rights. Appellee's first contention is that her homestead rights are superior to the right of the appellant to have a receiver appointed and to subject the rents and profits to the mortgage indebtedness because, under the provisions of the mortgage itself, as well as under our decisions, there could be no lien upon the rents and profits until after the action in foreclosure had been instituted; that before such lien for rents and profits came into existence, the appellee had acquired her homestead right in the mortgaged property and that this right of homestead is, therefore, superior to the lien of the mortgage indebtedness on the rents and profits. Granting that under the terms of the mortgage there would be no lien on the rents and profits until after default in the payment of principal or interest, and granting that under our decisions a pledge of rents and profits in a mortgage does not create a lien thereon until the commencement of the action to foreclose, we do not think it necessarily follows

that the appellant in this case has no right to subject the rents and profits to the payment of the mortgage indebtedness. It is stated in the mortgage itself, and is undisputed in this case, that the mortgage was given on account of the purchase price of the mortgaged premises. The mortgage was executed with the knowledge of C. H. Rosenbaum and was recorded before he or the appellee went into possession of the property and acquired homestead rights therein. The conveyance of the property to Rosenbaum was made subject to this mortgage. The homestead rights of Rosenbaum and the appellee were therefore acquired under the express agreement contained in the mortgage that the rents and profits and the possession of the property would be subject to the mortgage indebtedness. In our opinion, the mere fact that appellee acquired her right of homestead before the mortgage indebtedness became a lien on the rents and profits is not decisive of appellant's right to have such rents and profits subjected to the payment of the mortgage indebtedness under the terms of the contract contained in the mortgage. In other words, we think the provisions of the contract contained in the mortgage, and not the respective times when the lien of the mortgage and the homestead rights became effective, must prevail, unless there is something in the provisions of our homestead statutes which prevents the enforcement of the terms of the mortgage. Whether, under the provisions of our homestead statutes, the appellant did not have the right to the appointment of a receiver to collect the rents and profits, notwithstanding the terms of the mortgage, is an entirely distinct question, to which we now direct our attention.

Code section 10155, which is commonly known as the homestead exemption statute, and was in force in 1928 at the time of the execution of the mortgage here involved, is as follows:

"10155. * * * The homestead may be sold to satisfy debts of each of the following classes:

1. Those contracted prior to its acquisition, but then only to satisfy a deficiency remaining after exhausting the other property of the debtor, liable to execution.

2. Those created by written contract by persons having the power to convey, expressly stipulating that it shall be liable, but then only for a deficiency remaining after exhausting all other property pledged by the same contract for the payment of the debt."

Appellee contends that, because the mortgage does not contain any statement by which the mortgagors expressly waive the homestead rights, there can be no right to the appointment of a receiver to collect the rents and profits. In this case, however, the homestead was the only property covered by the mortgage. Code section 10147, which was in effect at the time of the execution of the mortgage, is as follows:

"10147. * * * No conveyance or incumbrance of, or contract to convey or incumber the homestead, if the owner is married, is valid, unless the husband and wife join in the execution of the same joint instrument, and the instrument sets out the legal description of the homestead."

The mortgage in question was executed by the then owner of the property and his wife and complied in every way with the provisions of the statute. We think it was therefore sufficient to meet the requirement of subdivision 2 of section 10155, making the property liable under a contract "expressly stipulating that it shall be liable." We find nothing in the provisions of the homestead statutes which expressly negatives the right to the enforcement of a contract providing for the appointment of a receiver and the subjection of rents and profits of a homestead to a mortgage indebtedness.

A more serious question is presented by the claim of appellee that, under the equitable principles applied by this court in construing our homestead statutes, great liberality will be exercised in protecting homestead rights, and that in no event is a mortgagee entitled to the appointment of a receiver and to the application of rents and profits of a homestead to a mortgage indebtedness, unless there be a showing that the mortgage security is insufficient and that the debtor is insolvent. It may be admitted that the language used in some of our decisions has been such as to furnish some basis for appellee's contention. However, so far as we have been able to find, the exact question here raised by appellee has never been directly presented to or determined by this court. In this case the only property involved in the mortgage is the homestead, and the mortgaged property had been sold at sheriff's sale, leaving the deficiency judgment, before hearing on the application for the appointment of a receiver. It is apparent, therefore, that the security provided by the mortgage was insufficient. The question to be determined is, was it incumbent upon the appellant to go further and to show

that the debtor was insolvent? In order to reach a decision on this question, it may be well to review some of our cases in which the question of homestead exemption has been involved.

In Gilbert v. Berry, 190 Iowa 351, 180 N. W. 197, there was involved the foreclosure of a mortgage upon a homestead. The plaintiff asked for the appointment of a receiver before sale, and the court denied such appointment. It appears that no showing was made either as to the insufficiency of the security or the insolvency of the debtor. In sustaining the refusal to appoint a receiver we said:

"For the reasons hereinafter stated, we reach the conclusion that it was at least incumbent upon the cross-petitioner to show the insolvency of the debtor *or* the inadequacy of its security in order to justify the court in terminating the right of occupancy and in dispossessing the family from its homestead during the year of redemption. Nor do we mean to imply by this statement that if such showing had been made it would have justified such dispossession. * * * We hold therefore that the mandate of the mortgage is qualified by the statute (section 2976) so far as a homestead is concerned, and that an application to appoint a receiver to take possession of a homestead is not to be granted as a matter of course in mere obedience to the mandate of the mortgage, but is to be granted or denied according to the rules of equity and with appropriate regard for the provisions of the contract. It necessarily follows that *in the absence of a showing by the mortgagee in support of such application* it should not be granted." (Italics supplied.)

In Sheakley v. Mechler, 199 Iowa 1390, 203 N. W. 929, there was involved the foreclosure of a mortgage upon 160 acres of land which included the defendant's homestead. The decree in that case made a provisional order for the appointment of a receiver under which the receiver was not entitled to take possession until about three months after the entering of the decree, and from this order appointing the receiver the defendants appealed. In affirming the holding of the lower court, we said:

"The real question at issue involves the right of occupancy of a homestead by the mortgagor during the year of redemption. May he pledge this right as security for a debt? If not, why not? Section 10150 of the Code of 1924, provides that: 'The homestead of

every family, * * * is exempt from judicial sale, where there is no special declaration of statute to the contrary.'

"Clearly a sale under foreclosure is a statutory judicial sale. What is the special declaration of our statute which removes the homestead from the defined exemption? It is: 'The homestead may be sold to satisfy debts * * * created by written contract by persons having the power to convey, expressly stipulating that it shall be liable, but then only for a deficiency remaining after exhausting all other property pledged by the same contract for the payment of the debt.' Section 10155, par. 2, Code of 1924.

"The *contract in the instant case* was executed by the persons having the power to convey the homestead. The contract did expressly waive homestead rights, and stipulated for the appointment of a receiver 'who shall take possession of the mortgaged premises and collect all rents and profits accruing therefrom.' But one question, therefore, calls for an answer: Had plaintiff's exhausted all other property pledged by *the same contract* for the payment of the debt before resorting to the homestead to pay the deficiency on the judgment, if a deficiency existed? How may it be known that a deficiency did exist until a sale of the mortgaged premises on execution? The market value of the real estate cannot be viewed as conclusive, nor can it be made the criterion in determining whether a deficiency will remain.

"In brief, we hold that a receiver under a mortgage may not take possession of the homestead until sale on execution is had, as it cannot be determined until that time, with that degree of certainty contemplated by the law, that a deficiency exists. The homestead is a solicitude of the law and this court recognizes the importance of the preservation of the home. The power to mortgage a homestead is qualified by statute and a judicial sale of the homestead under stipulations in a mortgage is to be enforced for the benefit of the mortgagee as a last resort only." (Italics appear in opinion.)

In Farmers Trust & Savings Bank v. Miller, 203 Iowa 1380, 214 N. W. 546, the trial court appointed a receiver in *its* decree foreclosing a mortgage on real estate which included a homestead. In affirming the action of the trial court we said:

"One other question is discussed, and that is that as to R. F. Miller and wife a receiver should not have been appointed for the

homestead; and we are cited to the rule announced in Sheakley v. Mechler, 199 Iowa 1390, 203 N. W. 929, where we held, in substance, that a receiver could not take possession of a homestead until after a sale on foreclosure, and then only when the property did not bring enough to satisfy the judgment. The record in the instant case, however, shows that there was a sale under the foreclosure and that the property did not sell for enough to satisfy the judgment, interest, and costs; and while, technically, it may be that a receiver should not have been appointed before this sale occurred, yet, as the execution sale showed a deficiency, he would be entitled to take possession of the homestead."

Finken v. Schram, 212 Iowa 406, 236 N. W. 408, was an action for the foreclosure of a mortgage in which the appointment of a receiver was asked. After sale of the property under the decree of foreclosure, a deficiency judgment remained unpaid and a receiver was appointed. In affirming the appointment of the receiver we said:

"Under the foreclosure proceedings, of course, they had a right to make statutory selection of a homestead subject to the stipulations in the mortgage so far as possession thereof is concerned. That portion of the answer averring that possession was not waived naturally raised fact and law questions, and the facts and law were against appellants' contention. Without question, the mortgage contains a sufficient receivership clause, which amounts to a waiver of possession during the redemption period. A deficiency judgment resulted after applying all the land, including the homestead, on the mortgage indebtedness. The receiver was not appointed until after this deficiency appeared. Hence the action of the district court in appointing the receiver at that late date recognized Schrams' homestead rights in harmony with our holding in Sheakley v. Mechler, 199 Iowa 1390."

In Gilbert v. Berry the first of the above-cited cases, the appointment of the receiver was asked at the time of the entry of the decree of foreclosure, without any showing as to inadequacy of security or insolvency, and the opinion states that it was incumbent upon the petitioner "to show the insolvency of the debtor or the inadequacy of its security." In the Sheakley v. Mechler case, supra, the question of the insolvency of the debtor is not mentioned. The language of the opinion, however, would indicate that is was not necessary for the mortgagee to show such insolvency before

being entitled to the appointment of a receiver. In this opinion it is said:

"But one question, therefore, calls for an answer: Had plaintiffs exhausted all other property pledged by *the same contract* for the payment of the debt before resorting to the homestead to pay the deficiency on the judgment, if a deficiency existed?"

The language and the words italicized by the court would seem to indicate that the only thing necessary to subject the rents and profits of the homestead to the mortgage indebtedness, under provisions of the mortgage, was that plaintiffs had *"exhausted all other property pledged by the same contract."* This case was referred to and followed in all the subsequent cases above cited, and in none of them is there anything that indicates an intention of this court to require proof of *both inadequacy of security and insolvency* in order to justify the appointment of a receiver and subject the rents and profits to the mortgage indebtedness in accordance with the provisions of a mortgage.

In the case of Prudential Insurance Co. v. Puckett, 216 Iowa 406, 249 N. W. 142, we said:

"We have held that a receiver ought not to be appointed in a proceeding to foreclose a mortgage, where the mortgage does not contain a pledge of the rents and profits or a stipulation for the appointment of a receiver, without a showing of insolvency; but we have never held that a receiver should not be appointed, except upon a showing of insolvency, where the mortgage pledges the rents and profits and provides for the appointment of a receiver, and the proof shows inadequacy of the security. We now hold that where the mortgage pledges the rents and profits and provides for the appointment of a receiver, and the proof shows inadequacy of security, a receiver should be appointed without proof of insolvency."

While the opinion in the above case does not show that a homestead was involved, we think the rule therein stated is equally applicable to cases where the action is to appoint a receiver to take charge of rents and profits under the terms of a mortgage providing therefor which covers a homestead.

We do not mean to say that in every case where the mortgagee has exhausted the mortgaged security and has a deficiency judgment

to which he wishes to subject the rents and profits of the mortgaged property under the terms of the mortgage a receiver must be appointed. Circumstances might exist in a particular case which would justify a court of equity in refusing to appoint a receiver and subject the rents and profits to the mortgage indebtedness according to the terms of the contract. But, where no such circumstances appear, we do not feel that even a court of equity is at liberty to refuse to enforce the plain provisions of a mortgage and deny the mortgagee that which the defendants by their voluntary agreement have obligated themselves to give to him.

It is argued by the appellee in this case that it would be inequitable to appoint a receiver and subject the rents and profits to the mortgage indebtedness, because the property was originally sold to Rosenbaum for $20,000 and he afterwards placed improvements thereon to the extent of $5,000, and that the mortgagee, after having received $8,000, is having the property restored to him with $5,000 worth of improvements thereon. It does not appear from the record, however, that this property was conveyed to Rosenbaum's grantor by the mortgagee in this case. Some argument is indulged in to the effect that the property was not worth the amount paid for it by Rosenbaum, but we think it sufficiently appears in the record that Rosenbaum was not imposed on in the purchase of the property. As far as the appellant-trustee or the beneficiary of the trust are concerned, there is nothing to indicate any inequitable conduct upon their part. An examination of the record fails to show any facts or circumstances which, in our opinion, would justify the court in refusing to give its aid to the carrying out of the terms of the mortgage.

We believe that, in refusing to appoint a receiver to collect the rents and profits of the mortgaged property, the trial court erred, and its decree is therefore reversed.—Reversed.

ALBERT, C. J., and all Justices concur.